IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CALVIN WILSON, | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | CIVIL ACTION NO.: |
| | * | 1:25-cv-00619-SDG |
| STRONG TRANSPORT, INC., | * | |
| HARJINDER SINGH, and | * | |
| AMTRUST INSURANCE COMPANY, | * | |
| | * | |
| **Defendants.** | * | |

## PLAINTIFF'S BRIEF IN OPPOSITION OF DEFENDANT AMTRUST INSURANCE COMPANY'S MOTION FOR LEAVE TO AMEND ITS ANSWER

Plaintiff Calvin Wilson respectfully submits this Brief in Opposition to Defendant AmTrust Insurance Company's Motion for Leave to File its First Amended Answer. AmTrust's motion is a transparent attempt to manufacture a coverage defense only after realizing the financial stakes of the Court's anticipated ruling, not because new facts have emerged.  From the moment AmTrust was named as a direct-action defendant in April 2025, AmTrust had direct notice that non-cooperation would be the central issue to their defense. Despite that knowledge, AmTrust filed an answer without asserting this defense, watched the non-cooperation evidence accumulate through discovery, and took no action until June 2026, more than ten months after the scheduling order's amendment deadline and

1

nearly eight months after AmTrust's own counsel confirmed the insureds had become unresponsive. Under binding Eleventh Circuit precedent, this Court should deny the motion because AmTrust cannot establish good cause under Rule 16(b) and because the proposed amendment is the product of undue delay that would substantially prejudice Plaintiff under Rule 15.

## I.    Legal Standard

The Eleventh Circuit has advised that a court should deny leave only "where there is [a] substantial ground for doing so, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment. *Oliver v. Experian Information Solutions, Inc.*, 2023 WL 12013248 (N.D.Ga., 2023) (Citing *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008.)).

The Eleventh Circuit holds that "In regard to the asserted errors in the district court's rulings on discovery and leave to amend, our review is limited. These decisions are entrusted to the sound discretion of the trial court and are reviewed only for abuse of discretion." *Burger King Corp. v. Weaver*, 169 F.3d 1310 (C.A.11 (Fla.), 1999) (See also *Forbus v. spears Roebuck & Co.*, 30 F.3d 1402, 1404 (11th

Cir.1994). ("A district court's decision to grant or deny leave to amend is reviewed for abuse of discretion.").

It is not an abuse of discretion for a district court to deny a motion for leave to amend following the close of discovery, past the deadline for amendments and past the deadline for filing dispositive motions. *Lowe's Home Centers, Inc. v. Olin Corp.*, 313 F.3d 1307 (C.A.11 (Ga.), 2002)(*Citing Hinson v. Clinch Cnty.*, Georgia Bd. of Educ., 231 F.3d 821 (C.A.11 (Ga.), 2000))

There is no abuse of discretion in district court's denial of leave to amend on grounds of undue delay, where movant failed to show good cause for delay. *Donnelly v. Wal-Mart Stores East, LP*, 844 Fed.Appx. 164 (C.A.11 (Fla.), 2021)(Citing *Brewer-Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000)).

## II.    Under Rule 16(b) Defendant AmTrust Cannot Show Rule Good Cause.

When a party seeks to amend after the time prescribed by the court for amendments to pleadings, the party "**must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a).**" *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (C.A.11 (Fla.), 1998)

"If [a] party was not diligent, the [good cause] inquiry should end. *Saewitz v. Lexington Ins. Co.*, 133 Fed.Appx. 695 (C.A.11 (Fla.), 2005)

**A.    Defendant AmTrust's Failed to Demonstrate Good Cause for the Delay.**

In present action, the deadline set forth in the Scheduling Order for amendments to pleadings was thirty (30) days after the filing of the Joint Preliminary Report and Discovery Plan, unless otherwise permitted by law. There is no language in the Joint Preliminary Report and Discovery Plan or the Scheduling Order that altered this deadline. Defendant AmTrust filed its motion for leave 10 months and 6 days after the filing of the Joint Preliminary Report and Discovery Plan.

In *Enterkin*, the court held that the movant failed to demonstrate good cause when they filed their motion for leave seeking to add new claims (that they could have brought at the commencement of the action or shortly thereafter) almost seven (7) months after the filing of the Joint Preliminary Report and Discovery Plan. *Land Resource Companies, LLC v. Enterkin*, 2005 WL 8154761 (N.D.Ga., 2005). The Court held that modification of the Scheduling Order would be necessary and therefore before addressing whether the motion should be granted pursuant to Rule 15(a) the Court must first address whether Plaintiff has shown good cause under Rule 16(b). *Id.* The same facts are present here, thereby authorizing denial of AmTrust's motion for leave.

The good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension. *Sosa v. Airprint*

*Systems*, Inc., 133 F.3d 1417 (C.A.11 (Fla.), 1998). As AmTrust's Defense counsel points out, AmTrust is named in this suit as a direct action because it issued a policy of insurance to Defendant Strong Transport, Inc. Of critical importance is the development of the Direct Action Statute. Before Senate Bill 426 was enacted, a plaintiff had a right of direct action against the motor carrier's insurer when a plaintiff was injured in an accident caused by a commercial driver working for a trucking company. As of July 1, 2024, direct actions against insurance carriers are no longer available as a matter of right, instead; a plaintiff must satisfy a statutory exception. The applicable exception here permitted a cause of action directly against Defendant AmTrust in April 8, 2025, after reasonable diligence, personal service could not be effected on either the defendant driver or the motor carrier. O.C.G.A. § 40-2-140(d)(A)(i-ii).

It is reasonable to conclude that AmTrust knew or should have known of its insured's failure to cooperate at the very moment it was named as a defendant, as the direct action claim against AmTrust exists precisely because Plaintiff was unable to locate and serve the insured, making the insured's non-cooperation not merely foreseeable, but the foundational basis for AmTrust's presence in this litigation. Despite this, AmTrust failed to plead their coverage defense for lack of cooperation in their June 20, 2025 Answer.

5

On October 22, 2025, AmTrust's Counsel disclosed that Defendants Strong and Singh had fled the country and become otherwise nonresponsive, confirming beyond any doubt the factual predicate for the noncooperation defense AmTrust now seeks to assert. Yet despite this unambiguous disclosure, AmTrust neither sought modification of the scheduling order nor moved for leave to amend its answer, waiting instead until June 6, 2026, nearly eight months later.[1] Good cause not shown where amendment requested two months after plaintiff obtained relevant documents. (*E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652 (N.D.Ga.,2008)(Citing *Thorn v. Blue Cross and Blue Shield of Fla., Inc.*, 192 F.R.D. 308 (M.D.Fla.,2000)).

### B.    Defendant AmTrust's Failed to Seek Amendment Despite Possession of  Information Supporting Their Need To Do So.

The 11th Circuit has held, "that the information supporting the proposed amendment to the complaint was available to the movant even before she filed suit **weighs against** a finding of diligence." *Hill & Mac Gunworks, LLC v. True Position, Inc.*, 2021 WL 2561853 (N.D.Ga., 2021) (Citing *AMG Trade & Distrib., LLC v. Nissan N. Am., inc.*, 813 F. App'x 403, 408 (11th Cir. 2020). In applying this precedent, this Court has held that "new discoveries" in the movant's possession 6

---

[1] It is unclear when exactly the Defense Counsel discovered that Defendant Strong and Singh would not participate, however; to make the assertion of such on October 22, 2025, assuming counsel exercised diligence in communicating with their client, they knew of the noncooperation well before disclosing this fact to Plaintiff's Counsel.

months prior to seeking leave does not demonstrate diligence or good cause to permit the amendment. *Id.*

Further, AmTrust's assertion that the request for leave to amend is based on newly developed facts is objectively false. AmTrust is not new to this litigation, and they have been represented by their appointed legal counsel since the filing of their Answer. AmTrust's brief confirms their acknowledgment of the non-cooperation issue during discovery. (Doc. 54-1 Brief pg 6 paragraph 3). This proves that the information supporting the proposed amendment was available to them and they failed to act, weighing against diligence and supporting the denial of their motion from any outlook.

### C.    Defendant AmTrust's Failure to Investigate Coverage Defenses Does Not Satisfy the Good Cause requirement.

AmTrust's Defense Counsel asserts that after filing a substitution of counsel in April 2026, AmTrust promptly evaluated the record, requested consent (which was refused) and promptly moved for leave to amend the answer- utilizing this rational to show both "good casue" and "diligence." Based on the forgoing, this assertion carries no weight because AmTrust undeniably knew of the defense now sought and simply failed to act or investigate the scope of their defenses.

In *Millennium Partners*, the movant failed to conduct an investigation that would identify possible coverage defenses and the court found this to be sufficient

to preclude amendment. *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293 (C.A.11 (Fla.), 2007). AmTrust's actions are even more egregious. The record is clear that Defendant AmTrust has known of the need for the non-cooperation defense since they were named in this action and they simply decided not to act either intentionally or by mistake[2]. However, the fact that a party or his counsel misunderstood the scope of established legal protections does not constitute good cause. *Jimenez v. U.S. Attorney General*, 146 F.4th 972 (C.A.11 (Fla.), 2025)(Citing *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008)).

>   **D.      AmTrust Cannot Claim "Good Cause" Based on an Attempt Untimely Trigger the MCS-90 Endorsement.**

*In Millennium Partners*, the court found that the movant's assertion that it had no knowledge of its anti-subrogation defense prior to the corporate representative deposition was sufficient to establish good cause for leave to amend its answer. *Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293 (C.A.11 (Fla.), 2007). However, in a motion for reconsideration, the court found otherwise. The court explained that Lexington's status as AIG's insurer was not, standing alone, the fact that mattered. Rather, it was Lexington's payment of AIG's claim and its resulting subrogation to AIG's right of recovery against Colmar that triggered the anti-subrogation rule. *Id*.

---

[2] As shown below, Plaintiff maintains the failure is not by mistake, but in effort to avoid an adverse ruling.

Here Defendant AmTrust seeks to trigger the MCS-90 Endorsement to reduce their financial exposure through the non-cooperation defense. Nonetheless, *Millennium Partners* found that Lexington's payment of the claim was likely inevitable, and that Colmar, through reasonable investigation, could have discovered its potential anti-subrogation defense before that payment occurred. *Id.* Consequently, the Court found that the movant seeking leave failed to demonstrate good cause to amend its answer to add anti-subrogation defense after scheduling order deadline had passed and they received documents and disclosures that should have prompted investigation into such defenses several months earlier. *Id.*

The same logic applies to AmTrust's motion for leave, which in reality seeks to trigger the MCS-90 endorsement coverage rather than full policy issued by AmTrust. Like the movant in *Millennium Partners*, AmTrust cannot claim "good cause" based on an attempt untimely trigger the MCS-90 Endorsement that they wish they had done sooner. The prospective MCS-90 applicability was just as foreseeable and discoverable through reasonable diligence as the subrogation payment in *Millennium Partners*. AmTrust knew or should have known of this issue long before and its delay reflects strategy, not a newly developed fact.

## III.    Denial of AmTrust's Leave to Amend under Rule 15(a) is Justified.

There are certain factors enumerated by both the Supreme Court and the Eleventh Circuit which justify denial of a motion for leave to amend. These factors

9

include undue prejudice to the opposing party, undue delay, bad faith on the part of the movant, futility of the motion, or repeated failure to cure deficiencies in prior amendments. *E.E.O.C. v. Exel Inc.*, 259 F.R.D. 652 (N.D.Ga.,2008) (Citing *Foman v. Davis*, 371 U.S. 178 (U.S.Mass., 1962)).

## A.    AmTrust Acted with Undue Delay.

Plaintiff hereby incorporates by reference the foregoing arguments establishing Defendant AmTrust's undue delay and its repeated failure to cure deficiencies. The same facts that defeat good cause under Rule 16(b) independently establish undue delay under Rule 15(a): a party who cannot show diligence in seeking amendment by definition cannot show that its delay was anything but undue. AmTrust's failure to act despite having notice of the non-cooperation issue since April 2025, and unambiguous confirmation of it by October 2025, reflects the same lack of diligence that precludes good cause, and that same lack of diligence is fatal here as well.

This is not a case where AmTrust lacked opportunity to seek amendment sooner. The Court repeatedly placed the parties on notice of the legal conflict arising from the non-cooperation issue, yet AmTrust chose not to act. That choice mirrors the conduct condemned in *Friedlander*, where the appellant deliberately forwent the opportunity to cure defects in his pleading despite repeated warnings from the trial court that amendment was necessary. *Friedlander v. Nims*, 755 F.2d 810

10

(C.A.Ga.,1985). AmTrust cannot now claim entitlement to amend simply because the consequences of its own delay have caught up with it particularly when the Court repeatedly warned of the present conflict between the Defendants.

### B.     AmTrust Seeks Merely To Avoid and Adverse Ruling.

In *Local 472¸* the court determined that the movant seeking leave appeared to be nothing more than an effort to avoid an adverse (summary judgment) ruling, concluding the District Court did not abuse its discretion in denying leave. *Local 472 of United Ass'n of Journeymen and Apprentices of Plumbing and Pipefitting Industry of U.S. and Canada v. Georgia Power Co.*, 684 F.2d 721 (C.A.Ga., 1982)

Here AmTrust outright informed this Court that avoiding an adverse ruling, rather than good cause, is the motive for seeking leave to amend. Defendant AmTrust's brief confirms that it did not seek leave previously because it did not "materially affect the case" until the Court indicated that it may strike its co-defendants' answer for failure to comply with discovery obligations. (Doc 54-1 p 6 paragraph 3). Stating further the imposition of sanctions for non-cooperation would "directly impact AmTrust's potential liability.[…]AmTrust therefore seeks amendment now, at the point the issue has become out-come determinative." (Doc 54-1 p 6 paragraph 3;4).

Just as in *Local 472*, AmTrust's admission that it only sought leave once the litigation landscape shifted against its co-defendants reveals a tactical motive rather than a good-faith basis for amendment, and this Court should likewise conclude that denying leave is not an abuse of discretion, but rather the appropriate exercise of it.

### C.    Permitting Leave Will Result in Prejudice to the Plaintiff.

In *Technical Resource Servs. v. Dornier Medical Sys., Inc.*, 134 F.3d 1458, 1464 (11th Cir. 1998), the Eleventh Circuit affirmed denial of leave to amend where the movant inexplicably waited until after the close of discovery to seek to add a new substantive claim, finding that the proposed amendment would have increased the complexity of the lawsuit and likely would have required that discovery be reopened. The court held that undue delay combined with the prejudice the amendment would cause to the opposing party supported denial of leave to amend, even where the movant argued that the opposing party had prior notice of the potential claim.

The same reasoning compels denial of AmTrust's motion to amend its answer here. AmTrust, as the insurer with control over client contact, the claims file, and the investigation, possessed actual and superior knowledge of the facts underlying any defense it now seeks to assert. AmTrust nonetheless inexplicably delayed in raising this defense, waiting until after discovery was completed to seek leave to amend. Just as the court in *Technical Resource Services* found that the movant's delay was

inexcusable where it was on notice of the potential claim, AmTrust's delay is equally, if not more, inexcusable given that the evidence supporting its proposed defense were exclusively within its own possession and control and they have failed to produce any evidence beyond mere assertions of non-cooperation.

Further, granting AmTrust leave to amend at this late stage would substantially prejudice Plaintiff in other ways. The proposed amendment would introduce coverage defense issues that are not relevant to the Plaintiff's claims but rather the contract/indemnity dispute between the named Defendants which should be raised after a judgement is entered. Defendant AmTrust merely seeks this amended because the non-cooperation defense reduces their financial exposure. If leave is permitted and AmTrust is successful in their defense, the MCS-90 rather than the issued policy applies. The AmTrust policy provides combined single limits coverage in the amount of $1,000,000. The MCS- 90 Endorsement, however; provides coverage in the amount of $750,000. The prejudice Plaintiff is clear; a clear liability trucking lawsuit will unnecessarily expand the scope of the litigation and preclude an equitable recovery for the damages.

## IV.    Defendant AmTrust's Defense of Non-Cooperation Is Not Germane To The Underlying Action.

This is a rear end trucking case and while non-cooperation is relevant to Plaintiff's tort claims and pending motion for sanctions, AmTrust's seeks to invoke

post judgement contract and indemnity defenses that are ordinarily resolved separately from the underlying action. Ultimately, AmTrust seeks this defense for purposes of indemnification and reducing its exposure to the MCS-90 coverage. The Northern District has stated that "Resolving the duty to indemnify before the underlying case is concluded could potentially waste resources of the court because the duty to indemnify could become moot if the insured prevails in the underlying lawsuit." *American Family Insurance Company v. Almassud*, 413 F.Supp.3d 1292 (N.D.Ga., 2019) (Citing *State Farm Fire & Cas. Co. v. Myrick*, 206-CV-359-WKW, 2007 WL 2007 3120226, at *2 (M.D. Ala. October 23, 2007.). Here AmTrust seeks prematurely to limit their exposure in liability and to reduce the amounts they will likely not recover through indemnification.

## V.     Defendant AmTrust Waived is Coverage Defense.

In Georgia, an insurer has three options when a lawsuit is pending against an insured who claims coverage: (1) "the insurer can defend the claim, thereby waiving its policy defenses and claims of non-coverage;" (2) "the insurer can deny coverage and refuse to defend, leaving policy defenses open for future litigation;" or (3) "the insurer can defend under a reservation of rights." *American Family Insurance Company v. Almassud*, 413 F.Supp.3d 1292 (N.D.Ga., 2019) (Citing to *Hoover v. Maxum Indem. Co.*, 291 Ga. 402 (Ga., 2012)). If an insurer assumes the defense or continues to defend its insured with actual or constructive knowledge that

14

a defense to coverage exists, the insurer may be estopped from asserting such defense at a later date. *Id*. (Citing *World Harvest Church, Inc. v. GuideOne Mut. Ins. Co.*, 287 Ga. 149 (Ga., 2010)).

AmTrust's presence in this action is proof of its knowledge of the non-cooperation issue, its named-defendant status arises directly from the Direct Action Statute's exception permitting suit against an insurer where the insured could not be served.  AmTrust's own basis for being in this case was, from day one, the insured's unavailability. AmTrust's October 22, 2025 disclosure that Strong and Singh had fled the country confirmed this knowledge beyond dispute. Yet AmTrust litigated this case for over a year, through the close of discovery, without ever reserving its rights or otherwise placing Plaintiff or the Court on notice that it intended to invoke non-cooperation.

AmTrust cannot escape this consequence by pointing to a coverage defense that invokes the MCS-90 Endorsement's guarantee of coverage to the motoring public. That guarantee prevents AmTrust from denying coverage to Plaintiff outright, but it does not restore AmTrust's failure to timely reserve its right to contest the scope of that coverage. Having proceeded without reservation while sitting on facts it knew supported a non-cooperation defense, AmTrust is now estopped from invoking that defense to reduce its exposure from the policy's full limits to the MCS-90 minimum, just as an insurer who defends without reservation is estopped from

later denying coverage altogether. AmTrust's motion for leave should therefore be denied.

## VI.   Conclusion

Based on the foregoing, Defendant AmTrust unequivocally has failed to demonstrate under Rule 16(b) Rule 15(a) leave should be granted. Wherefore Plaintiff respectfully request this Court DENY Defendant AmTrust's Motion for Leave to Amend their Answer.

This 6th day of July, 2026.

> */s/ Benjamin R. Keen*
> BENJAMIN R. KEEN
> Georgia Bar No. 810828
> Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Overlook II
2839 Paces Ferry Rd SE, Suite 400
Atlanta, GA 30339
(404) 751-1162 telephone
(855) 674-1818 facsimile
ben.keen@beasleyallen.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a true and correct copy of the foregoing document upon counsel for the opposing parties in the foregoing matter via the Court's CM/ECF electronic filing system as follows:

### **Counsel for Defendants Strong Transport, Inc., and Harjinder Singh**

Robert A. Quinn
Matthew A. Nanninga
Bree'ara Murphy
DREW ECKL & FARNHAM, LLP
303 Peachtree St., NE
Suite 3500
Atlanta, GA  30308
quinnr@deflaw.com
nanningam@deflaw.com
murphyb@deflaw.com

### **Counsel for Defendant Amtrust Insurance Company**

Seth M. Friedman
Spenser L. West
Lewis, Brisbois, Bisgaard & Smith, LLP
600 Peachtree Street, Suite 4700
Atlanta, Georgia 30308
seth.friedman@lewisbrisbois.com
spenser.west@lewisbrisbois.com

This 6th day of July, 2026.

/s/ Benjamin R. Keen
BENJAMIN R. KEEN

THIS IS TO CERTIFY that, pursuant to LR 5.1B, NDGa., the above document was prepared in Times New Roman, 14 pt.

17